**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 15 2014, 10:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**YVONNE FERGUSON-WATKINS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDON HICKS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1308-CR-739 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1211-MR-77384

**July 15, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Brandon Hicks (Hicks), appeals his conviction for Count I, voluntary manslaughter, a Class B felony, Ind. Code § 35-42-1-3; Count II, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11; and his sentence following a jury trial.

We affirm.

## ISSUES

Hicks raises two issues on appeal which we restate as follows:

(1) Whether the trial court abused its discretion when sentencing Hicks; and

(2) Whether Hicks received ineffective assistance of counsel.

## FACTS AND PROCEDURAL HISTORY

During the evening of September 22, 2012, Hicks was at Bubba's Bar & Grill (Bubba's) in Indianapolis, Indiana, with friends. On that night, Josh Bolin (Bolin) was bartending at the bar. According to Hicks, he and Bolin had known each other for a few years through their mutual work as drug dealers. After exchanging pleasantries, Bolin invited Hicks to an after-party at his house and explained that there would be high-end marijuana there. In response, Hicks stated that he had his own marijuana. This led to Bolin "sucker-punch[ing]" Hicks in his "mouth and nose area." (Transcript p. 337). Hicks then "pulled himself back up to the bar, and [Bolin] hit [him] again and knocked [him] down to the ground." (Tr. p. 338). After the altercation, Hicks sat in the parking lot outside of Bubba's and called the police. When Officer Matthew Musselman

2

(Officer Musselman) of the Indianapolis Metropolitan Police Department (IMPD) arrived, he took several photos of Hicks' injuries, and Hicks told Officer Musselman that the altercation was the result of a mistaken identity. There was no follow-up conversation with the police about this altercation, and no arrests were made.

On November 12, 2012, at approximately 10:30PM, Hicks and his friends, Graham Girgenti (Girgenti) and Misty Girgenti (Misty), went to Krazy Street Bar & Grill (the Bar) in Indianapolis, Indiana, to watch Monday Night Football. There were about thirty to thirty-five people at the bar. Shortly after their arrival, Hicks saw Bolin enter the Bar with friends. According to Hicks, he became afraid when he saw Bolin come in, so he called his brother, Ronald Hicks (Ronald), to inform him that Bolin was there. Ronald told Hicks that he was on his way to pick him up.

Soon after Hicks finished talking to his brother, Bolin approached him. Hicks stood up and words were exchanged, but no one else could hear what they were saying because of the noise in the bar. Hicks testified that Bolin told him, "Motherfucker, I will kill you." (Tr. p. 352). There was no yelling, but the two men were only one foot away from each other. Shortly thereafter, Bolin punched Hicks in the face. The punch caused Hicks to fall back slightly, and he reached for his .40 Smith and Wesson semi-automatic handgun that was concealed in an inner holster inside his pants. Hicks pointed the gun at Bolin and fired. Hicks testified that he and Bolin struggled for the gun after the first shot. Hicks was able to free himself by firing two additional shots at Bolin. In total, Hicks shot Bolin three times. When Carl Emerson (Emerson), the security guard at the Bar, saw

what had happened, he attempted to seize Hicks by placing him in a headlock. During this time, Hicks uncontrollably fired two more shots, one of which went into his own leg. Emerson finally managed to subdue Hicks and instructed him to drop his gun.

When Hicks realized that he had shot himself in the leg, he started wailing and Emerson helped him sit down. Hicks then removed $1,400.00 in cash and over eight grams of marijuana from his pocket and gave it to Girgenti. The money and marijuana were later recovered by the police. Bolin died at the scene as a result of the gunshot wounds.

After police officers arrived on the scene, Hicks was transported to Wishard Hospital and arrested for preliminary charges of murder and possession of marijuana. When Hicks was released from the hospital, he voluntarily gave a statement to Detective Gregory Hagan (Detective Hagan) of the IMPD. He told Detective Hagan that he did not know who Bolin was and that he could not remember anything about the shooting.

On November 15, 2012, the State filed an Information charging Hicks with Count I, murder, a Class A felony, I.C. § 35-42-1-1 and Count II, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11. On July 23 through July 24, 2013, a jury trial was conducted. At the close of evidence, the jury found Hicks guilty of both voluntary manslaughter and possession of marijuana.

On August 7, 2013, the trial court held a sentencing hearing. The trial court considered the evidence presented and determined that the aggravating circumstances of Hicks' crime outweighed the mitigating circumstances. Consequently, Hicks was

4

sentenced to a term of forty years for voluntary manslaughter, and one year for possession of marijuana, with the sentence to be served concurrently.

Hicks now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Abuse of Sentencing Discretion*

Hicks claims that the trial court abused its discretion when it imposed a sentence of forty years for voluntary manslaughter, a Class A felony. A person who commits a Class A felony shall be imprisoned for a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4. Thus, Hicks' forty year sentence exceeds the advisory sentence. He now argues that the trial court abused its sentencing discretion by using prejudicial testimony as an aggravating circumstance and by failing to give weight to certain mitigators.

We note that "[s]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). We will find an abuse of discretion where "the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, an abuse of discretion cannot be based upon the trial court's determination of the weight to be accorded to such factors. *Id.* at 491. Indiana Appellate Rule 7(B) gives

this court the authority to revise a sentence if, "after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." It is on this basis alone that a criminal defendant may now challenge his sentence where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing the particular sentence that is supported by the record, and the reasons are not improper as a matter of law. *Anglemyer*, 868 N.E.2d at 490. The burden is on the defendant to persuade the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

## A. *Aggravator*

Hicks argues that the trial court abused its discretion by using his testimony about his drug dealing— uncharged conduct—as an aggravating factor. Specifically, he asserts that the testimony is prejudiced and should have been excluded pursuant to Indiana Evidence Rule 404(B), which prohibits evidence of other uncharged crimes to be used to prove the character of a person. The admission of this evidence is not an issue in this case. The issue raised is whether the evidence was properly used by the trial court as an aggravating factor during his sentencing hearing. This court has held that allegations of prior criminal activity need not be reduced to conviction before they may be properly considered as aggravating circumstances by a sentencing court. *Harlan v. State*, 971 N.E.2d 163, 170 (Ind. Ct. App. 2012).

6

Turning to the facts and circumstances of this case, we note that it was Hicks himself who admitted at trial that he had worked as a drug dealer. *See Fredrick v. State*, 755 N.E.2d 1078 (Ind. 2001) (holding that the trial court properly considered the defendant's drug dealing as an aggravating factor). Therefore, we find that the trial court did not abuse its discretion by considering it an aggravating factor at the sentencing hearing.

## B. *Mitigator*

As for mitigating factors, Hicks contends that the trial court failed to "give weight to" his traumatic childhood that caused him to have an extreme fear of physical altercations. Here, the trial court acknowledged that Hicks' childhood was traumatic but gave no weight to this when sentencing him. The trial court specifically stated that in spite of Hicks' alleged fear, there were several other and more reasonable choices that could have been made. Accordingly we find that the trial court did not abuse its discretion when it recognized Hicks' background and alleged fears but did not assign any weight to them *See Anglemyer*, 868 N.E.2d at 490.

## C. *Nature and Character*

As stated in *Anglemyer*, this court is under no obligation to weigh aggravating and mitigating factors and will only consider whether a sentence is appropriate in light of the nature of the offense and character of the offender. *See* Appellate Rule 7(B). With respect to the nature of Hicks' offense, we note that Hicks opened fire in a public bar, shot an unarmed Bolin three times, and fired two additional random shots. His use of the

deadly weapon in response to a punch was excessive, and there were many options that were available to him to avoid an altercation. In light of the foregoing, we find that Hicks' sentence is appropriate in light of the nature of the offense.

As to Hicks' character, we note that he has a minimal criminal history. However, we cannot ignore that Hicks admitted during trial that he was a drug dealer, thereby establishing that he is not a law abiding citizen. Under these circumstances, we find that Hicks' sentence is not inappropriate in light of his character. Accordingly, we find that the trial court did not abuse its sentencing discretion when it sentenced Hicks to forty years for voluntary manslaughter.

## II. *Ineffective Assistance of Counsel*

Hicks also contends that his trial counsel provided ineffective assistance, thereby denying his Sixth Amendment right to counsel. In support of his claim, he asserts that his trial counsel's conduct undermined the proper functioning of the judicial process and detrimentally affected the outcome of the trial.

We review claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Greene*, 2 N.E.3d 737, 740 (Ind. Ct. App. 2013).

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id*. Counsel's performance is presumed effective and a defendant must offer strong and convincing evidence to overcome this presumption. *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005). We will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Greene*, 2 N.E.3d at 740. To establish prejudice, Hicks must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. *Smith*, 689 N.E.2d at 202. We need not approach the inquiry in the same order or even address both components of the inquiry if the defendant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697.

We note that Hicks brings this claim on direct appeal. While this is not prohibited, post-conviction proceedings are usually the preferred forum for adjudicating these types of claims because, on most occasions, they require defendants to present evidence and develop new facts to support the claims they make. *Rogers v. State*, 897 N.E.2d 955, 965 (Ind. Ct. App. 2008). On direct appeal, this court only reviews the trial record, and "when the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *Id*.

Here, Hicks contends that his trial counsel was ineffective on the following grounds: (1) counsel argued against the exclusion of prejudicial evidence; (2) counsel

9

failed to present evidence; (3) counsel failed to adequately cross-examine the State's witnesses; (4) counsel failed to call a specific witness requested by Hicks; (5) counsel failed to prepare Hicks and advise him about giving testimony; (6) counsel failed to offer expert medical testimony on the effects from Bolin's punch; (7) counsel failed to conduct an investigation; and (8) counsel failed to argue the elements of self-defense. Only two of these claims — that counsel argued against the exclusion of prejudicial evidence and that counsel failed to argue the elements of self-defense — are based upon the direct appeal record. The remaining six claims are based upon evidence outside of the record which we will not address.[1]

## A. *Admission of Prejudicial Evidence*

Hicks asserts that he received ineffective assistance of counsel because his trial counsel argued for the admission of prejudicial evidence. Specifically, trial counsel asked the trial court to allow testimony about Hicks' previous drug dealing activities even though the State moved to exclude the testimony because "the prejudicial value outweigh[ed] the probative value." (Tr. p. 254). During the trial, trial counsel acknowledged that admitting testimony about Hicks' drug dealing would be an admission against Hicks' interest; however, counsel reasoned that the relationship between Bolin

---

[1] On February 18, 2014, the State filed a motion to strike a witness statement and two affidavits from the Appellant's Appendix, arguing that they were not part of the record. This court granted the State's motion on March 14, 2014. In this regard, we will not address the six issues raised by Hicks outside the record. *See Rogers v. State,* 897 N.E.2d 955 (Ind. Ct. App. 2008) (holding that every indulgence is given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight when the only record that a claim of ineffective assistance of counsel is based on is the trial record).

and Hicks should be mentioned because there had been a social tension resulting from Hicks leaving a drug dealing organization in which he and Bolin were members.

Hicks' contention on appeal is based on his belief that the testimony regarding his activities as a drug dealer was irrelevant. Hicks also argues that there is no reasonable argument to suggest that trial counsel's argument against exclusion of this evidence was a part of a strategy and in his best interest. Further, Hicks argues that it is only reasonable to assume that in a case such as his, allowing testimony regarding his past uncharged crimes would undermine the mitigating factors regarding his character and have more of a negative effect than positive.

This court will not speculate as to what may or may not have been an advantageous trial strategy. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). At the time of the trial and under the circumstances, counsel acknowledged that the testimony would be against Hicks' interest but also noted the value and importance of admitting it as evidence. Hicks cannot overcome the presumption that counsel performed effectively. Although counsel's decision to have Hicks testify about his drug dealing might be poor strategy, this alone does not render the representation ineffective. Because Hicks failed to make an insufficient showing on the performance prong of the *Strickland* test, we need not address the prejudice prong.

B. *Self-Defense Argument*

Hicks' second contention for ineffective assistance of trial counsel based on the record is that his counsel failed to argue the elements of self-defense. He argues that counsel did not refer to the elements of self-defense "one time during the course of trial, until her closing argument, at which point she did not explain the elements of self-defense nor argue said elements." (Appellant's Br. p. 30).

A person is justified in using reasonable force against another person to protect himself from what he reasonably believes is an imminent use of unlawful force. I.C. § 35-41-3-2(a). When a person raises a self-defense claim, he is required to show three facts: (1) he was in a place he had the right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or great bodily harm. *Wallace v. State,* 725 N.E.2d 837, 840 (Ind.2000). The State has the burden to disprove or rebut at least one element of self-defense beyond a reasonable doubt when a defendant claims that he acted in self-defense. *Carroll v. State*, 744 N.E.2d 432, 433-34 (Ind. 2001). "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v.* State, 720 N.E.2d 696, 700 (Ind. 1999). At the close of the evidence, the jury was given written instructions by the trial court, which restate the self-defense statute and require that the force used in self-defense is reasonable.

Hicks now argues that trial counsel was ineffective because the State failed to disprove any of the elements of his self-defense claim and trial counsel failed to address

12

this issue diligently at trial. The State had the burden of rebutting at least one element of self-defense. A review of the State's evidence shows that Bolin was unarmed and attacked Hicks by punching him with his fist. The State's primary argument was that Hicks' use of a gun to defend himself against Bolin, who was unarmed, was excessive and thus unreasonable. The self-defense statute requires that the force used to protect oneself is reasonable and "the [jury] is not precluded from finding that a defendant used unreasonable force simply because the victim was the initial aggressor." *Birdsong v. State*, 685 N.E.2d 42, 45 (Ind. 1997). Hence, the State provided evidence to rebut at least one element of Hicks' self-defense claim and the jury could reasonably decide that Hicks did not act in self-defense. Because the State did not fail to rebut at least one element of self-defense at trial, trial counsel was not ineffective by not addressing it as thoroughly as Hicks wanted her to.

In sum, Hicks fails to overcome the presumption that his trial counsel's performance was effective. Thus, he failed to satisfy his burden of showing that his trial counsel's performance fell below an objective standard of reasonableness and that there is a reasonable possibility that the result of the proceeding would have been different if his counsel had not made the alleged errors. We therefore find that Hicks was not denied the right to effective assistance of trial counsel.

## CONCLUSION

Based on the foregoing, we conclude that trial court did not abuse its sentencing discretion, and Hicks did not receive ineffective assistance of trial counsel.

ROBB, J. and BRADFORD, J. concur